The **FLORIDA NATIONAL BANK OF JACKSONVILLE, FLORIDA, and Herbert T. Ballard, Jr.,** as Co-Executors of the Estate of Herbert T. Ballard, Deceased

v.

**UNITED STATES of America,
Appellant.**

**No. 14839.**

United States Court of Appeals
Third Circuit.

Argued June 19, 1964.

Decided Sept. 24, 1964.

John M. Hammerman, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attorneys, Department of Justice, Washington, D. C., Drew J. T. O'Keefe, U. S. Atty., Francis R. Crumlish, Asst. U. S. Atty., on the brief), for appellant.

Samuel L. Sagendorph, Norristown, Pa. (Wright, Spencer, Manning & Sagendorph, Norristown, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

Does the Limitation provision in § 2036 of the Internal Revenue Code of 1954 [1] making that section inapplicable

---

1. "§ 2036. Transfers with retained life estate.

"(a) General rule.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

"(1) the possession or enjoyment of, or the right to the income from, the property, or

"(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

"(b) Limitation on application of general rule.—This section shall not apply to a transfer made before March 4, 1931; nor to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46

with respect to transfers prior to March 4, 1931, preclude the levying of an estate tax under § 2038 of the 1954 Code?[2]

The District Court answered in the affirmative, holding that "the applicability of § 2036 precludes taxation under § 2038". 221 F.Supp. 861, 863 (E.D.Pa. 1963).

The hard core of the Government's position on this appeal is that it relies for taxability on § 2038 and not on § 2036; that (1) there is nothing in the provisions of the two sections which makes them mutually exclusive; (2) that the March 4, 1931 limitation in § 2036 is expressly confined to that section and does not bar application of § 2038; (3) § 2038 contains no provision making it inapplicable to transfers prior to March 4, 1931; and (4) the indenture of trust executed by the decedent on February 20, 1929, retained certain powers to make changes regarding the income and principal, and the power to remove the trustee and appoint a successor, which made the corpus of the

trust includible in the decedent's gross estate under § 2038.

It must immediately be noted that the District Court did not reach the issue as to whether the decedent had retained a power to alter or amend the trust under the provisions of § 2038 because of its view that "§ 2036 precludes taxation under § 2038". It was the District Court's view that "the single issue before us is whether or not this trust comes under § 2036 or § 2038." 221 F.Supp. 862.

The indenture by which the decedent Herbert T. Ballard created the *inter vivos* trust[3] in 1929 (he died December 15, 1956) contained the following clause:

"Ballard has irrevocably parted with the title to the securities and property constituting the subject matter of this trust estate, but reserves to himself the right at any time to make any change in the limitations herein contained with respect to the distribution of principal and income

Stat. 1516). Aug. 16, 1954, 9:45 a. m., E.D.T., c. 736, 68A Stat. 382."

2. "§ 2038. Revocable transfers
"(a) In general.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States)—
&ast; &ast; &ast; &ast; &ast;
"(2) Transfers on or before June 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph. &ast; &ast; &ast; Aug. 16, 1954, 9:45 a.m., E.D.T., c. 736, 68A Stat. 383."

3. The trust indenture provided that the Trustee was
"To hold, manage, invest and reinvest the same, collect the income and pay 52% of the net income thereof monthly to Ballard's wife, Mary Jane Ballard, and 16% of the net income thereof monthly to each of Ballard's children, Ruth E. Ballard, Esther B. Ballard and Herbert T. Ballard, Junior, until the death of Ballard's wife, Mary Jane Ballard. Thereafter the Trustee shall pay the entire net income of the trust estate monthly to Ballard's children, Ruth E. Ballard, Esther B. Ballard and Herbert T. Ballard, Junior, and their issue, in equal shares, per stirpes, until twenty-one years after the death of the last survivor of Ballard's wife and children above named, when the trust shall terminate and the Trustee shall grant, pay over and deliver the principal of the trust estate to the issue of Ballard's children, in equal shares, per stirpes, absolutely. Provided, however, that in the event of the death of any of Ballard's children without leaving issue surviving, the Trustee shall grant, pay over and deliver the share of principal from which such child was receiving the income, to Ballard's surviving children and issue of deceased children, in equal shares, per stirpes, absolutely."

of this trust fund, provided that no such appointment shall be in favor of himself or his estate. Ballard further reserves the right at any time, upon thirty days written notice to the Trustee, to cause the resignation of the Trustee, which shall then state a final account of its management of the trust estate and shall deliver all the assets composing the trust estate to such other Trustee as Ballard may designate, and shall thereupon be released and discharged from all liability as trustee hereunder. In all other respects this Deed of Trust is irrevocable."

The Internal Revenue Service determined that the value of the corpus of the trust was includible in the decedent's gross estate under § 2038 on the theory that under the quoted clause the decedent had retained power to alter, amend or revoke the trust except that he could not make an appointment to himself, and assessed a deficiency in tax. The estate paid the tax and later filed the instant action for refund on its theory that the trust was a transfer distinctly described in § 2036 and since it was created prior to March 4, 1931 it was expressly excluded from taxation by subsection (b). The District Court held that Commissioner v. Ridgway's Estate, 291 F.2d 257 (3 Cir.1961) and Commissioner v. Canfield's Estate, 306 F.2d 1 (2 Cir. 1962) "are authority for the general proposition that § 2036, * * * avoids taxation of the trust fund as a part of the gross estate when the 'transfer' of legal title took place prior to 1931", and entered summary judgment in favor of the estate.

The District Court erred in construing Ridgway and Canfield to be dispositive.

Neither case presented the issue as to whether "the applicability of § 2036 precluded taxation under § 2038"; otherwise stated, that the provisions of

the two sections make them mutually exclusive.

In Ridgway, the Commissioner sought to include the trust corpus in the decedent's gross estate under a predecessor section of § 2036, and in Canfield under § 2036, since in each instance he could not have invoked § 2038 inasmuch as the creator of the trust had long prior to death relinquished power reserved in the trust indenture to change its provisions,[4] and § 2038 is only applicable where the power is extant at the date of death. In both cases the critical issue was solely as to whether the act of relinquishment, occurring after March 4, 1931, was the "transfer", or whether the "transfer" occurred when the trust was created prior to the 1931 date. In the instant case the decedent did not prior to his death relinquish the reserved power to alter or amend the trust with respect to making a change regarding the income or principal, so that Ridgway and Canfield are inapposite on their facts; and for the further reason that they did not even touch upon the issue presented here as to whether the March 4, 1931 limitation provision of § 2036 "precludes taxation under § 2038", since the Commissioner there had invoked only § 2036.

Section 2038 does not contain a provision excluding from its coverage *inter vivos* trusts created prior to March 3, 1931 as does § 2036 (and its predecessor sections).

Ridgway and Canfield decided only that a "transfer" occurs at the time a trust is created and not at the time a retained power to alter or amend the trust is relinquished.

In Ridgway we made it clear that the trust would have been includible in the decedent's estate under the predecessor section of § 2036 had it not been "relieved of taxation under the exception [limitation]" of the section.

4. In Ridgway the trust was created in 1930, and the decedent relinquished his power to change the distribution of principal or income in 1944—nine years before his death in 1953. In Canfield the trust was created in 1919, and the decedent relinquished her power of appointment in 1942—17 years before her death in 1959.

What has been said is dispositive of the estate's first contention that the District Court did not err in its reliance on Ridgway and Canfield.

The estate's second contention is that "other than the powers expressly excluded from taxation by § 2036, the decedent retained no other powers to alter or amend which would subject it to taxation under § 2038." In support of this contention it asserts that "alter" or "amend" as used in § 2038, "are general in meaning and import", and apply only where the settlor retained "a power to change (i. e. revoke) his act", and not merely, as here, retained power "to make any change * * * with respect to the distribution of principal and income of this trust fund."

Section 2036(a) (2) includes in the estate of the decedent all transfers made by him during his lifetime in which he retained "the right * * * to designate the persons who shall possess or enjoy the property or the income therefrom." Section 2038 affects transfers "where the enjoyment thereof was subject at the date of [the decedent's] death to any change through the exercise of a power * * * to alter, amend, revoke, or terminate." If one has the power to "alter" or "amend" the enjoyment of property he has essentially the same power as one who may "designate the persons who shall possess or enjoy the property or the income therefrom."

We said in Mellon v. Driscoll, 3 Cir., 117 F.2d 477, 478, 479 (1941), cert. den. 313 U.S. 579, 61 S.Ct. 1100, 85 L.Ed. 1536:

> "The theory of the tax is both old and familiar. The settlor's death * * * ends his power and so passes a valuable assurance of title. The statute [the 1926 Code predecessor of § 2038] has been given a liberal interpretation and taxability thereunder found in many different sets of circumstances. A shifting of economic benefits has been stressed. *The grantor need not be able to exercise the power for his own benefit and in fact may expressly exclude any alteration in favor of himself. A change in beneficiaries or a change in the amounts they are to take is sufficient.* (Emphasis supplied.)"

To the same effect see Commissioner v. Bridgeport City Trust Co., 124 F.2d 48 (2d Cir. 1941), cert. den. 316 U.S. 672, 62 S.Ct. 1042, 86 L.Ed. 1747 (1942).

In the instant case the decedent reserved to himself "the right at any time to make any change in the limitations herein contained with respect to the distribution of principal and income of this trust fund, provided that no such appointment shall be in favor of himself or his estate." This reservation of "the right at any time" to shift the "economic benefits" of the trust, existing at the date of the decedent's death, brought the trust within the provisions of § 2038. Mellon v. Driscoll, supra.[5]

There remains this to be said.

The text writers, and the Treasury Regulations, are in agreement that sections 2036 and 2038 "overlap"; that accordingly, the value of a trust may be includible in a decedent's gross estate under either or both sections, and that they are not mutually exclusive. Lowndes and Kramer, Federal Estate & Gift Taxes (2d ed. 1961), Sec. 9.14, p. 188; Montgomery's Federal Taxes (38th ed. 1961), p. 21; 2 Mertens, Law of Federal Gift and Estate Taxation (Rev. 1959), sec. 13.10, pp. 64–69; Treasury Regulations on Estate Tax (1954 Code), 26 C.F.R., Sec. 20.2131–1.

For the reasons stated the Judgment of the District Court in favor of the plaintiff estate will be reversed and the cause remanded with directions to proceed in accordance with this opinion.

5. In Commissioner v. Hager's Estate, 3 Cir., 173 F.2d 613 (1949) we held that the corpus of a trust was includible in the decedent's estate under the predecessor section of § 2038 where the power was reserved to determine whether gains realized from the sale of securities in the trust should be treated as income or retained as part of the corpus, and to pay out or accumulate the income.